No. 12858

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

THE STATE OF MONTANA, ex rel
CITY MOTOR COMPANY, INC., a
corporation,

Relators,

-vs-

THE DISTRICT COURT OF THE EIGHTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF
CASCADE, THE HON. PAUL G. HATFIELD,
DISTRICT JUDGE and FRED DOLBERG,

Respondents.

---

ORIGINAL PROCEEDING:

For Relators:

Marra and Wenz, Great Falls, Montana
Joseph R. Marra argued, Great Falls, Montana
Church, Harris, Johnson and Williams, Great Falls,
Montana

For Respondents:

Hoyt and Bottomly, Great Falls, Montana
John C. Hoyt argued, Great Falls, Montana.

---

Submitted: December 17, 1974

Decided: JAN - 9 1975

Filed: JAN - 9 1975

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an original proceeding. Relator City Motor Company seeks a writ of supervisory control or other appropriate writ directing the district court of Cascade County to vacate its order denying relator's motion for summary judgment under Rule 56, M.R.Civ.P., and to enter in its stead an order granting the motion, all in Cascade County cause No. 73754C. This Court heard counsel for relator ex parte and an alternative writ was issued setting a show cause hearing. Both parties thereupon submitted briefs and were represented by counsel on oral argument.

The facts are simple: Ronald Phillips, codefendant with relator, was employed by relator as a new and used car salesman. On the night of February 27, 1971, plaintiff in cause No. 73754C was driving his car in the city of Great Falls when he was struck broadside in an intersection by a vehicle driven by Phillips. At the time Phillips was using a "demonstrator" owned by relator and provided for Phillips' use. The complaint against relator was predicated on the theories of respondeat superior and negligent entrustment. However, the answer denied Phillips was acting within the course and scope of his employment when he collided with plaintiff and that relator knew or should have known about Phillips' driving record. In support of its motion for summary judgment, relator relied on the depositions of Phillips and Ole Aafedt, sales manager for relator. It is contended the former document clearly demonstrates that Phillips was in no way engaged in relator's business when the accident occurred and the latter shows that relator did everything reasonably expected of it in ascertaining Phillips' driving abilities.

Rule 56, M.R.Civ.P., provides in pertinent part:

"(b) * * * A party against whom a claim * * *
is asserted * * * may, at any time, move for a

summary judgment in his favor as to all or any part thereof.

"(c) * * * The motion shall be served at least 10 days before the time fixed for the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * A summary judgment * * * may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

In Silloway v. Jorgenson, 146 Mont. 307, 310, 406 P.2d 167, this Court discussed the rationale behind the provision for summary judgment:

"The general purpose of Rule 56 is to promptly dispose of actions in which there is no genuine issue of fact, thereby eliminating unnecessary trial, delay, and expense. 6 Moore Fed.Prac.2d, § 56.11, page 2057 further states:

"'A summary judgment is a judgment in bar that results from an application of substantive law to facts that are established beyond a reasonable controversy. The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute; and if not, to render judgment in accordance with the law as applied to the established facts.'

"At page 2131, Sec. 56.15 of 6 Moore Fed.Prac.2d that authority states the burden placed upon the party opposing summary judgment in these words:

"' * * * the party opposing motion must present facts in proper form--conclusions of law will not suffice; and the opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, nor merely suspicious.'"

In Hager v. Tandy, 146 Mont. 531, 537, 410 P.2d 447, this Court said:

" * * * on a motion for summary judgment the formal issues presented by the pleadings are not controlling and the court must consider the depositions, answers to interrogatories, and admissions on file, oral testimony and exhibits presented."

See: Daniels v. Paddock, 145 Mont. 207, 399 P.2d 740; 3 Barron & Holtzoff, § 1236.

Thus the determinative question here is whether respondent has raised factual issues that are material and of a substantial

nature. After studying the whole record, especially the depositions of Phillips and Aafedt, we must conclude that respondent has fallen short of meeting this burden.

Was Phillips acting within the course and scope of his employment at the time of the February 27, 1971 accident? Respondent purports to find agency relationship between relator and Phillips on the basis of certain selected passages from Aafedt's deposition. For example:

"Q. And what is the purpose of giving your salesmen a demonstrator? A. Well, we hope to use it as a tool to sell Chevrolets. I would like to think that is what they use them for.

" * * *

"Q. And it is your belief, at any rate, that any time a salesman is in a demonstrator that it is a sales asset to City Motors? A. Yes; it certainly is.

" * * *

"Q. Now, then, do you think that the more exposure you give your new vehicles by use on the city streets of Great Falls the better off City Motors is? A. I am sure that is bound to be true.

" * * *

"Q. And was Mr. Phillips given a demonstrator in part for the purpose of driving it on the streets so that people can see your new vehicles? A. Along that line, yes.

"Q. So that is what he was doing at the time of the accident, wasn't it? A. Driving one of our demonstrators?

"Q. Yes. A. Right.

"Q. With your permission? A. Right.

"Q. And you felt this was in furtherance of the benefit of City Motor Company. A. Right."

Respondent also quotes section 53-118, R.C.M. 1947, concerning dealer's motor vehicle license plates, and cites cases in other jurisdictions which have construed like statutes to give rise to a presumption that a salesman driving a car displaying dealer's

plates is operating it in the dealer's business, and this presumption continues in the absence of unequivocable evidence to the contrary.

The chief difficulty with this line of argument is that it ignores the balance of Aafedt's testimony and Phillips' testimony altogether. Aafedt further testified:

"Q. Now, what do you expect your salesmen to do with the demonstrators you furnish them? A. Well, as I mentioned, want them to demonstrate them. They are, however, available for their own personal use * * * they can even leave the city, they can leave the state with permission, prior permission. For personal use, but they are to be used as a demonstrator."

On cross-examination:

"Q. You didn't mean to imply by your testimony, did you, that at the time of the accident Ronald Phillips was in the course and scope of his employment? A. No; he was alone. He wasn't demonstrating the car. He was going home, so he wasn't heading toward a prospect, if that is what you mean.

"Q. There was a question, somewhat ambiguous, that Mr. Hoyt asked you, and that is whether or not at the time of the accident, and I'm quoting the question to the best of my memory, whether or not at the time of the accident he was employed by City Motors, and my question to you is that you did not mean to imply by that answer, did you, that he was in fact acting in the course and scope of his employment at the time of the accident? A. No."

The pertinent part of Phillips' testimony is this:

"Q. Where had you been just prior to the accident? A. The Wrangler restaurant.

" * * *

"Q. Where were you going from there? A. Going home.

"* * *

"Q. Did you stop anywhere after you left the Wrangler before you had the accident? A. Yes, I did. I don't recall where. I picked up some hot dog buns and some milk or something of this sort, I can't recall. I know I picked it up, but I don't know if it was at a store, it might have been at Super America, next door.

"Q. On instructions from your wife? A. Right.

" * * *

"Q. And from the time you left the Wrangler to the time of the happening of the collision, were you directly or indirectly engaged in any business for City Motors Chevrolet Company? A. I would say no.

"Q. Would it be correct if I said you were on your way home to have supper? A. Right.

" * * *

"Q. Relative to the demonstrator program--and I refer to the fact that you were provided with a demonstrator--was that demonstrator always used in the course of City Chevrolet business? A. No."

Respondent also stresses the fact that while at the restaurant Phillips met with one Charles Plant, who had previously led several customers to him. However, there is nothing in the record indicating that their visit on this particular occasion was anything but social. Had all these things been fairly considered and weighed, respondent may well have found--as we do-- unequivocable evidence that Phillips was acting outside the course and scope of his employment at the time of the accident.

Beyond this, we detect a recurring theme in respondent's reasoning: the mere fact that a demonstrator on the street is of benefit to the dealer is enough to make the dealer answer for the faults of his salesman who drives it. This asks too much, for it would hold the dealer responsible at all times. We are not aware of any rule or policy of agency law requiring such a sweeping application of the doctrine of respondeat superior. Moreover, the law in Montana is settled on the point that where an employee uses the master's car on a mission of his own, some slight incidental benefit which may thereby accrue to the master is insufficient to warrant holding the master liable for the employee's negligent operation of that vehicle. Monaghan v. Standard Motor Co., 96 Mont. 165, 173, 29 P.2d 278. Cases in

- 6 -

other jurisdictions are in agreement. See: Grier v. Grier, 192 N.C. 760, 135 S.E. 852; Slattery v. O'Meara, 120 Conn. 465, 181 A. 610; and Sullivan v. Associated Dealers, 4 Wash.2d 352, 103 P.2d 489.

Since respondent has shown no facts adequate to support the requisite agency relationship between Phillips and relator at the time in question, we apply the prevailing rule of law as declared by this Court in Monaghan:

"It is well settled that even though the driver of a car is the servant of the owner of the car, the owner is not liable unless at the time of the accident the driver was acting within the scope of his authority and in regard to his master's business."

To the same effect see: Harrington v. H. D. Lee Mercantile Co., 97 Mont. 40, 33 P.2d 553; Wilcox v. Smith, 103 Mont. 182, 62 P.2d 237.

Did relator negligently entrust a demonstrator motor vehicle to Phillips? The gist of respondent's argument here is that relator, by not obtaining a copy of Phillips' driving record from the Montana Highway Patrol, failed to exercise proper care in selecting Phillips for its sales force. As to this theory, relator knew from Phillips' job application that he had had no motor vehicle accidents during the preceding five year period and that he possessed a valid Montana driver's license. Aafedt testified that persons hired for sales, as opposed to drivers positions were investigated further with respect to their general character and sales ability, but nothing more. What else could reasonably be expected of relator under the circumstances? Respondent certainly has not presented any hard facts to indicate relator knew or should have known Phillips had anything other than a good driving record.

We think that relator, upon discovering Phillips to be a duly licensed motor vehicle operator, prima facie was entitled

to rely on his competency as a driver. Piquet v. Wazelle, 388 Pa. 463, 136 A. 787. That relator inquired even further of Phillips bears out its contention that every reasonable effort was made to determine Phillips' fitness as an employee. To insist that relator was under an affirmative duty to ascertain or keep abreast of Phillips' driving record would be to place upon relator and others similarly situated a burden unjustified by either its own needs or the public good.

Let a writ of supervisory control as prayed for issue in accordance with our holding herein.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 8 -