No. 12932

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

SEYMOUR L. STORCH,

Plaintiff and Appellant,

-vs-

BOARD OF DIRECTORS OF THE
EASTERN MONTANA REGION FIVE
MENTAL HEALTH CENTER, et al.,

Defendants and Respondent.

Appeal from: District Court of the Sixteenth Judicial District,
A. B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

Robert L. Stephens, Jr. argued, Billings, Montana

For Respondent:

Lucas, Jardine & Monaghan, Miles City, Montana
James P. Lucas argued, Miles City, Montana
Habedank, Cumming & Best, Sidney, Montana
Jacque W. Best argued, Sidney, Montana

Submitted: December 11, 1975

Decided: JAN 21 1976

Filed: JAN 21 1976

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff Seymour L. Storch brings this appeal from a judgment of the district court, Custer County, the Hon. A.B. Martin presiding, dismissing plaintiff's complaint for failure to state a claim upon which relief may be granted.

The individually named defendants in this action are members of the Board of Directors of the Eastern Montana Regional Mental Health Center, Region 5. On December 4, 1972, plaintiff Storch was employed on a probationary basis by the Mental Health Center as a drug abuse consultant. During plaintiff's probationary period, board member Ethel Bond made a written recommendation to Rod L. Newman, Program Director for the Center, that Storch's employment be terminated. Upon review of this recommendation and other complaints received, the Board of Directors sought the termination of Storch's employment with the Center for these reasons:

> "1. His physical appearance and body cleanliness are not acceptable for a professional person in our community.
>
> "2. While we recognize that his personal life is a private matter, the Board feels we cannot condone the open illicit cohabitation. This does not set a good example for people with problems or our young people.
>
> "3. The medical community has been consulted. The response by the doctors except one has been they would not refer patients to this man and feel the Center has deteriorated since the addition of this man to the staff.
>
> "4. His behavior and actions reflect upon the Center adversely. We realize that there are some people who have benefited from his service. But for the good of the Center and the continued support from the communities, we have asked for Mr. Storch's resignation."

On May 16, 1973, Rod L. Newman, Program Director, asked Storch for his resignation. Upon Storch's request for an explanation, Newman sent him a letter listing the reasons cited by the Center's Board of Directors and advising Storch that as a probationary employee, he had no right to appeal or hearing. When

Storch refused to resign, his employment was terminated, effective June 15, 1973.

With the termination of his employment, Storch, through legal counsel, filed a complaint in Custer County district court seeking special damages of $250,000, punitive damages of $50,000, and $50,000 for injury to plaintiff's reputation. The three counts of the complaint went basically to the contention that the reasons given by the Board in the letter requesting plaintiff's resignation were libelous reflections on his professional ability and improper invasions of his constitutional right to privacy.

In answer to plaintiff's complaint, defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted. The motion to dismiss stated two basic reasons:

1. That the acts complained of were discharged by an agency of state government as a governmental function and were therefore subject to the defense of sovereign immunity.

2. That the acts complained of were within the proper discharge of an official duty and were therefore subject to the defense of absolute privilege.

The complaint being dismissed with prejudice the district court's judgment operated as a final determination upon the merits and was therefore res judicata for purposes of plaintiff's cause. Thereafter, plaintiff appealed to this Court.

The sole issue before this Court is whether the district court erred in granting defendants' motion to dismiss.

Plaintiff contends that section 83-701, R.C.M. 1947, the specific statutory provision then in effect, waived any sovereign immunity (1889 Constitution in effect at time cause of action accrued) to the extent that the state or its instrumentalities were insured. This contention erroneously presupposes that liability insurance is the only limitation on waiver of statutory immunity.

- 3 -

It is an established general principle that any statutory waiver of a state's immunity from suit is to be strictly construed. 72 Am Jur 2d, States, Etc., §121. This Court recognized the continuing validity of this principle in Kish v. Montana State Prison, 161 Mont. 297, 301, 505 P.2d 891, when it quoted from Kaldahl v. State Highway Commission, 158 Mont. 219, 221, 490 P.2d 220:

> "'As to legal actions against the state, the 1959 legislature passed Chapter 7, Title 83, R.C.M. 1947 - "Tort Actions Against the State", and in seven sections, sections 83-701 through 83-707, carefully determined how, why, and when the state could be sued in a tort action. These legislative enactments recognized tort liability and establish immunity of the state in excess of a collectible insurance. Thus, these statutory provisions provide a remedy against the state under certain circumstances. The legislature has spoken and we are bound by its enactments.'" (Emphasis supplied.)

See also: Valley County v. Thomas, 109 Mont. 345, 97 P.2d 345; State ex rel. LaPoint v. District Court, 69 Mont. 29, 220 P. 88.

The statute, section 83-701, R.C.M. 1947, provided in pertinent part:

> "The district courts of the state of Montana shall have exclusive jurisdiction to hear, determine, and render judgment to the extent of the insurance coverage carried by the state of Montana on any claim against the state of Montana for money only, accruing on or after the passage and approval of this act, on account of damage to or loss of property, or on account of personal injuries or death caused by the negligence or wrongful act or omission of any employee of the state of Montana. * * *"

The statute expressly restricts waiver of tort immunity to the common tort actions for recovery of damages for personal injury or death or damage to property. Applying the rule of strict construction, the plaintiff's two basic claims of libel and invation of privacy do not fit into the tort categories specified in the statute. It thus becomes unnecessary to discuss the effect of any liability insurance because the failure of the "certain circumstances" test of Kaldahl constitutes an absolute bar to waiver of sovereign immunity.

- 4 -

Plaintiff also contends that defendants' reliance on the privileged communication defense to a libel claim is misplaced because Montana law requires the absence of malice for such a defense. In this case, plaintiff claims the alleged libelous communication involved malice and therefore the defense could not stand. We find no merit in this contention.

A privileged communication is one which, except for the circumstances under which it is made, may be defamatory and actionable. Section 64-208, R.C.M. 1947, provides:

"What communications are privileged. A privileged publication is one made:

"1. In the proper discharge of an official duty;

"2. In any legislative or judicial proceeding, or in any other official proceeding authorized by law;

"3. In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information;

"4. By a fair and true report, without malice of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof."

While some of the quoted subsections do mention malice the pertinent subsection 1, says nothing about qualified privilege. Rather it constitutes an absolute privilege with the only requirement being that the intradepartment communication be one rendered while engaged in an "official duty". There can be no doubt that the hiring and firing of employees is part of the "official duty" of Montana Regional Health Centers. The title of Chapter 246, Laws of 1967, reads:

"An Act Expanding Duties and Services of the Division of Mental Hygiene of the State Board of Public Institutions by Establishing and Conducting Mental Health Clinics and Community Comprehensive Mental Health Centers; Creating Regional Mental Health Boards; Providing for the Organization Thereof * * *." (Emphasis supplied.)

Thus it becomes obvious the legislative intent was to make the mental health center an arm of the state and hiring and firing a function of that agency.

Whether statements made by such public officers in relation to the hiring and firing of employees may be subject to absolute privilege has been answered in the affirmative many times. Under facts similar to the instant case, the United States Supreme Court in Barr v. Matteo, 360 U.S. 564, 571, 79 S.Ct. 1335, 3 L ed 2d 1434,1441, stated that insofar as a public officer was acting within the scope of his authority his communication was absolutely privileged. See also: Newbury v. Love, 242 F.2d 372; Morgan v. Willingham, 424 F.2d 200; Preble v. Johnson, 275 F.2d 275.

The Court went on to say why an absolute privilege was essential in such a circumstance, quoting approvingly from Judge Learned Hand's decision in Gregoire v. Biddle, 177 F.2d 579, 581:

> "'* * * it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irrespon- sible, in the unflinching discharge of their duties.* * *'"

Since the internal communication was within the proper discharge of an official duty, it enjoyed an absolute privilege and could therefore not be the subject of libel action.

Finally, the facts stipulate that plaintiff was on probationary status. The purpose of such status is to provide a brief period in which to measure the employee's ability to perform his job before granting him a degree of job security. If the appropriate state employer feels that the employee is not measuring up during this probationary period it can dismiss that employee without procedural due process. M.A.C. 2-3.34 (26)-S34160.

Plaintiff places heavy reliance on Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L ed 2d 570,577, for his claim that the exercise of the right of privacy constitutes sub- stantive due process and as such is controlling on the constitutional

issue in this case, even though his employee status was probationary.  In _Perry_ the Court stated:

> "* * * even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely.  It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests * * *."

So the issue becomes whether the dismissal of plaintiff infringed upon his substantive due process right of privacy.
At the outset, it should be remembered that the exercise of constitutional rights is not absolute.  In Weber v. Highway Commission of State of Montana, 333 F.Supp. 561, 564, Judge Russell E. Smith said:

> "* * *His exercise of his [employee's] rights to freedom of speech * * * did not furnish him with a form of job insurance. * * *

> "* * * that the motive for the firing was generated by plaintiff's exercise of his first amendment rights does not in my opinion prevent the Highway Department from dismissing him if a valid cause for dismissal is shown. * * *"

Thus where an overriding government interest can be shown, the employee's exercise of substantive constitutional rights is not controlling in the disposition of the case.

Here, the letter from the Chairman of the Personnel Committee to the Director of the Eastern Montana Regional Mental Health Board, which forms the core of plaintiff's complaint, gave several reasons for requesting plaintiff's dismissal but the main ingredient was the belief by the Board of Directors that the plaintiff's personal life style  was adversely affecting his ability to adequately discharge his professional duties.  Specifically the Board felt that because plaintiff was engaged in counseling people with personal problems, his own personal philosophies became relevant to his job performance.  Since those personal philosophies conflicted with what the Board saw as the goals of the Mental Health Board, it utilized its authority as overseer of employee

performance to recommend plaintiff's dismissal.

That when an employee's conduct affects his ability to adequately perform his duties he can be discharged is well established. In Bruns v. Pomerleau, 319 F.Supp. 58, 67, it is stated:

> "* * *What he does in his private life, as with other public employees, should not be his employer's concern unless it can be shown to affect in some degree his efficiency in the performance of his duties. * * *" (Emphasis supplied.)

See also: Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L ed 2d 811; Battle v. Mulholland, 439 F.2d 321; Pred v. Board of Public Instruction, 415 F.2d 851.

Accordingly, the judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 8 -