No. 81-563

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

IN THE MATTER OF UNFAIR LABOR
PRACTICE:
BRUCE YOUNG, et al.,

Plaintiffs and Respondents,

vs.

CITY OF GREAT FALLS,

Defendant and Appellant.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

For Appellant:

David V. Gliko argued, City Attorney, Great Falls,
Montana

For Respondents:

Hon. Mike Greely, Attorney General, Helena, Montana
D. Patrick McKittrick argued, Great Falls, Montana
Robert Jensen, Bd. Personnel Appeals, Helena, Montana

Submitted: May 11, 1982

Decided: June 10, 1982

Filed: JUN 1 0 1982

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The City of Great Falls (City) appeals from a judgment of the Cascade County District Court, Eighth Judicial District, affirming that part of a decision of the Board of Personnel Appeals (Board) that the City was guilty of violations of sections 39-31-401(1) and (3), MCA. The respondent cross-appeals from that part of the District Court's decision which reversed the hearings examiner's finding that the City had violated section 39-31-401(4), MCA.

The parties raise these issues:

1. Whether there was an unfair labor practice giving jurisdiction to the Board, or merely a possible breach of contract which should have been resolved under the contract's grievance procedure?

2. Whether the hearings examiner and the Board failed to apply the "but for" test?

CROSS-APPEAL

3. Whether the District Court erred by reversing the Board's finding of violation of section 39-31-401(4), MCA, stating that "any alleged violation of subsection (4) must have occurred before the filing of the unfair labor practice charge."

On January 10, 1979, the Construction and General Laborers' Local No. 1334, AFL-CIO (Union), on behalf of Bruce Young, filed an unfair labor practice charge with the Board of Personnel Appeals.

On October 12, 1979, the hearings examiner issued findings of fact, conclusions of law and recommended order, finding the City in violation of sections 39-31-401(1), (3), and (4). These findings were confirmed and adopted,

-2-

after review of the City's objections, by the Board's final order, issued February 21, 1980.

On March 21, 1980, the City petitioned the District Court for judicial review of the Board's final order. Pursuant to the complainant's motion, the District Court dismissed the petition for failure to name the Board as a party.

On August 20, 1981, this Court reversed the District Court's order (___ Mont. ___, 632 P.2d 1111, 38 St.Rep. 1317) holding that the Board need not be named as a party.

Thereafter, the cause was heard in the District Court, which issued the October 21, 1981 order from which this appeal and cross-appeal are taken.

Bruce Young was employed as a laborer in the Street Department of the City of Great Falls from March 20, 1977 to December 30, 1977, when he was laid off for lack of work. He was recalled on May 2, 1978, and worked until October 31, 1978, when he was laid off again.

During Young's tenure as a city employee, he filed, with the assistance of his union representative, four grievances under the collective bargaining agreement between the City and the Craft Council, of which Laborer's Union No. 1334 is a member.

The first, in May 1978, involved Young's transfer to the Water Department, while another employee with less seniority, Harold Spilde, remained with the Street Department. The grievance was resolved by Young's transfer back to the Street Department.

The second grievance arose in June 1978 when Young was sent home without pay for lack of work while Spilde again stayed. Young was subsequently compensated for four hours work.

The third occurred shortly thereafter when Spilde was placed in a permanent position over Young and Gerald Hagen. This one was resolved when Hagen, the most senior employee involved, was given the job.

The last grievance ultimately resulted in the filing of this unfair labor practice charge. Young challenged his October 31, 1978 lay-off because Spilde, with less Street Department seniority, was retained and doing laborer's work. Since Spilde was not a member of the Laborer's Union, the Union requested that he be terminated. At subsequent meetings between Union and City officials, pursuant to Step 1 of the Grievance Procedure in the Collective Bargaining Agreement, it was agreed that Spilde would not do work within the jurisdiction of the Laborer's Union.

Spilde was then transferred to the Traffic Division of the Street Department, where according to Bob Duty, Superintendent of the Department, he did laborer's work only during emergencies.

However, several Street Department employees testified that Spilde did perform "almost 100%" laborer's work until January 5, 1979. Also, his employment record classifies him as a laborer from May 1, 1978 to January 5, 1979, during which time he was paid laborer's wages.

In addition to Spilde, CETA employees with less seniority than Young continued to do laborer's work after Young's discharge. Furthermore, 7 or 8 new employees were hired by the Street Department in April 1979, but not Young. It was in this time period that Duty, apparently during a safety meeting, said in effect, "I don't care what happens. I won't hire Bruce Young back in the Street Department." In the same vein, during the resolution of Young's first grievance,

-4-

Duty told him that he had no hard feelings, "he just didn't like having some SOB telling him who he could or could not hire."

JURISDICTION

The City contends that complainants' charge does not state an unfair labor practice giving the Board jurisdiction, and that the grievance should have been resolved through the grievance procedure set out in the collective bargaining agreement.

Section 39-31-403, MCA provides that violation of section 39-31-401, MCA, the charge stated here, is an unfair labor practice remediable by the Board. At issue here is whether the Board should have deferred to the contract grievance procedure.

The District Court, in its consideration of this issue, simply stated that "[T]his Court agrees with the reasoning of the Hearings Examiner." That reasoning, with which we also agree, is reflected in the following discussion.

Because of the similarity between Montana's Collective Bargaining Act for Public Employees (Title 39, Chapter 31, MCA) and the National Labor Relations Act, it is helpful to consider federal precedent on this issue.

A "prearbitral deferral policy" was first enunciated by the NLRB in Collyer Insulated Wire (1971), 192 NLRB 837, 77 LRRM 1931. There, quoting from Jos. Schlitz Brewing Co. (1968), 175 NLRB 23, 70 LRRM 1472, 1475, the NLRB found "that the policy of promoting industrial peace and stability through collective bargaining obliges us to defer the parties to the grievance-arbitration procedures they themselves have voluntarily established." Collyer at 77 LRRM 1936.

-5-

It went on to note several circumstances in that case which "no less than those in Schlitz, weigh heavily in favor of deferral." The dispute arose within the confines of a long and productive collective bargaining relationship. No claim of enmity was made. Respondent had credibly asserted its willingness to arbitrate under a clause providing for arbitration in a broad range of disputes. The contract and its meaning lay at the center of the dispute. The contract obligated each party to submit to arbitration and bound them to the result. Collyer at 77 LRRM 1936-37.

We can distinguish Collyer on these factors alone. The Board's findings, with respect to questions of fact which are supported by substantial evidence and are therefore conclusive (section 39-31-409(4), MCA) show that the City's conduct "does not lead one to believe that a stable collective bargaining relationship exists between the parties," that "[T]here was no indication of a willingness on the part of the City to arbitrate," and that the "grievance procedure provided in the contract does not culminate in a final and binding decision. It may end in a 'binding' decision, if a majority of a six-member committee formed by the city manager and comprised of three city and three union representatives can reach agreement."

It should be noted here that the City's reliance on section 39-31-310, MCA is misplaced. It claims that the section is a legislative mandate that public employers are not bound to go to final and binding arbitration, thereby nullifying any contrary NLRB ruling. In fact, the section is permissive, not mandatory. It merely allows the parties to agree voluntarily to submit any or all issues to final and binding arbitration. No such agreement was made here,

-6-

nor does the contract require it, which as we have stated, is one basis for not deferring in this case.

Furthermore, the NLRB in General American Trans. Corp. (1977), 228 NLRB 808, 94 LRRM 1483, held that the <u>Collyer</u> doctrine is not applicable in cases involving alleged interference with protected rights or employment discrimination intended to encourage or discourage the free exercise of those rights. See sections 8(a)(1) and (3), NLRA and sections 39-31-401(1) and (3), MCA. The charge here involves such alleged violations. Deferral is inappropriate in this case.

<u>UNFAIR LABOR PRACTICES</u>

Regarding the charges themselves, the District Court concluded "that there is substantial evidence on the record considered as a whole to support the findings and conclusions of the Board with regard to the violations of Section 39-31-401(1) and (3)." Again we agree. Without wading through the wealth of available precedent propounded by the hearings examiner, we will simply restate his determinative findings.

As to section 39-31-401(1), MCA, the examiner found "that the fact that Mr. Young had a record of filing grievances affected the judgment of those city officials responsible for laying him off and keeping a person with less seniority on the payroll as a laborer." Motive is not the critical element in this violation.

As to section 39-31-401(3), the examiner found that "[T]he evidence clearly points to the conclusion that the City's discriminatory motive was a factor, and probably the dominate (sic) factor, in its decision to lay off complainant and thereby violate the agreement. Its actions caused unrest among union members and had the effect of discouraging membership."

## "BUT FOR" TEST

The City relies here on Western Exterminator Co. v. N.L.R.B. (9th Cir. 1977), 565 F.2d 1114, which states the rule that where a discharge is motivated by both a legitimate business consideration and protected union activity, the test is whether the business reason or the protected union activity is the moving cause behind the discharge. 565 F.2d at 1118. This Court adopted essentially the same test in Board of Trustees of Billings, etc. v. State (1979), ___ Mont. ___, 604 P.2d 770, 777, 36 St.Rep. 2289, 2299.

In this case, although the "but for" test was not utilized by the hearings examiner, he did find, again, "that the City's discriminatory motive was a factor, and probably the dominate (sic) factor, in its decision to lay off complainant." The record amply demonstrates that protected union activity was the moving cause behind the discharge.

## CROSS-APPEAL

Section 39-31-401(4) makes it an unfair labor practice for an employer to:

> "(4) discharge or otherwise discriminate against an employee because he has signed or filed an affidavit, petition, or complaint or given any information or testimony under this chapter;. . ."

The Board found there was a violation "after he (Young) filed this unfair labor practice charge because he was not called back by the city."

The District Court reversed because "any alleged violation of subsection (4) must have occurred before the filing of the unfair labor practice charge, not afterward."

Respondents do not contend that filing a grievance is equivalent to signing or filing an affidavit, petition, or complaint. Instead, they point to two statutes:

-8-

"39-31-407. Amendment of complaint. Any complaint may be amended by the complainant at any time prior to the issuance of an order based thereon, provided that the charged party is not unfairly prejudiced thereby."

"39-31-408. Modification by board of findings and order. Until the record in a proceeding has been filed in district court, the board at any time, upon reasonable notice and in such manner as it considers proper, may modify or set aside, in whole or in part, any finding or order made or issued by it."

We agree that Young was discriminated against after this charge was filed. Since he could have amended his complaint to include that discrimination had it not already been part of his original complaint, and since the City could therefore not possibly have been prejudiced thereby, we reverse the District Court on this point and grant the cross-appeal. The order of the Board is reinstated.

Affirmed in part, reversed in part.

_____
John C. Sheehy
Justice

We Concur:

_____
Frank P. Haswell
Chief Justice

_____
John Conway Harrison

_____

_____
Justices