JUSTICE WARNER
delivered the Opinion of the Court.
¶1 The Montana State University College of Technology in Great Falls (COT) appeals denial of its motion for summary judgment, the District Court’s directed verdict for Constance MacKay (MacKay) and Elissa Orcutt (Orcutt), as well as several of the court’s evidentiary rulings. We reverse and remand with instructions to dismiss.
¶2 We address the following issue on appeal: Did the District Court err in denying COT’s motion for summary judgment?
¶3 Because we hold that the District Court erred when it failed to grant the COT’s motion, it is unnecessary to address the remaining issues presented by the parties.
FACTUAL AND PROCEDURAL BACKGROUND
¶4 MacKay and Orcutt are former nursing instructors at the COT. As COT employees, MacKay and Orcutt were covered by the Collective Bargaining Agreement (CBA) between the Montana Board of Regents and COT as the employer and Vocational-Technical Educators of *469 Montana, MFT, AFT, AFL-CIO as the union. Neither MacKay nor Orcutt were members of the union. However, they paid a representation fee to the union as provided for by the terms of the CBA.
¶5 In the spring of 1997, Scott Dion (Dion), a student in COT’s nursing program, enrolled in practicum rotations taught by Orcutt. The successful completion of these practicum rotations is required for graduation from the nursing program. During his last rotation, Dion failed Orcutt’s class and, therefore, did not graduate from the program as scheduled in June 1997. Dion consequently re-enrolled in Orcutt’s practicum rotation in December of 1997 and failed a second time. His status as a COT student terminated on December 16, 1997.
¶6 It was alleged that during his attendance at COT, Dion intimidated both Orcutt and her supervisor MacKay, COT’s Director of Nursing. In 1997, after fading his practicum rotations, Dion had stated that “all hell will break loose” at the COT graduation ceremony and that he would “take care of everyone on the stage.” As a result of these perceived threats, COT arranged to have both ceremonies patrolled by plain clothes police. Dion, however, did not attend either graduation. In class, however, a student overheard Dion say that if he ever saw MacKay or Orcutt walking down the street he would run them down in his car. In addition, Dion was seen driving in front of MacKay’s home. Five months later, Orcutt obtained a temporary restraining order against Dion. MacKay and Orcutt went to the COT union representative with their fears, however, the union representative did not investigate the matter. They also sought help from the Dean and the Associate Dean of COT. According to MacKay and Orcutt, while the Associate Dean reviewed the matter, she also “pounded her fist on the table” and yelled at them for complaining.
¶7 In March 1998, Dion filed a complaint against COT with the Human Rights Commission (HRC) alleging gender discrimination. He claimed that Orcutt and MacKay both made offensive remarks and discriminated against him. In its defense at the HRC hearing, COT made several statements which, when taken as a whole, reflected COT’s belief that Dion had a history of belligerence and aggression during his time at COT. Following a hearing on the matter, the HRC concluded that COT had -unlawfully discriminated against Dion by subjecting him to sexual intimidation. MacKay and Orcutt claim that COT’s poor preparation for the hearing resulted in the unfavorable HRC ruling.
¶8 Following the HRC proceeding, Dion continued to intimidate MacKay and Orcutt. Both were alarmed when Dion went to the COT *470 campus to distribute literature about the HRC proceeding in September 1999. Orcutt and MacKay continued their attempts to discuss the situation with their supervisors and COT’s legal counsel, however, they believed that their concerns fell on deaf ears. In December 1999, MacKay obtained a restraining order against Dion. Ultimately, Orcutt resigned from COT in December 1999, and MacKay resigned the following month.
¶9 In April 2000, MacKay and Orcutt filed a suit against the State of Montana, the Board of Regents and the Montana University System (collectively referred to here as COT). The complaint included the following claims: (1) that COT had negligently failed to provide them a safe working environment; (2) common law constructive discharge; (3) statutory constructive discharge; and (4) breach of the covenant of good faith and fair dealing.
¶10 On September 21,2001, COT moved for summary judgment on all of MacKay and Orcutt’s claims based, inter alia, on the ground that the CBA contained a grievance procedure and that they had failed to utilize it. The motion was extensively briefed. A hearing on all the pretrial motions was held in November. After hearing argument, the District Court denied COT’s motion. The record contains neither a transcript of the hearing, nor any written order giving the reasons the District Court denied the motion.
¶11 A jury trial on the matter then began in November 2001, and lasted for over two weeks. After the close of the evidence, MacKay and Orcutt moved for a directed verdict, contending that they had established liability as a matter of law. The court granted the motion, holding that the Montana Safety Act, §§ 50-71-201(2), 203(4), MCA, was applicable, and that MacKay and Orcutt were entitled to a directed verdict on negligence -under Count 1. The court also directed a verdict on Count 2, common law constructive discharge, and Count 4, violation of the covenant of good faith and fair dealing. The District Court further held that in view of the ruling that common law constructive discharge had been established, Count 3, violation of the Montana Wrongful Discharge From Employment Act did not apply. The question of damages was then submitted to the jury.
¶12 COT filed this timely appeal from the judgment entered in the District Court.
¶13 We hold that the District Court erred in denying COT’s motion for summary judgment and that this issue is dispositive.
STANDARD OF REVIEW
¶14 The standard of review for a grant of summary judgment is de *471 novo. This Court will apply the same evaluation as the district court based upon Rule 56, M.R.Civ.P. The moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Gonzales v. Walchuk, 2002 MT 262, ¶ 9, 312 Mont. 240, ¶ 9, 59 P.3d 377, ¶ 9; Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. Bruner, 272 Mont. at 264, 900 P.2d at 903. Our standard of review of a question of law is whether the legal conclusions of the trial court are correct. Gonzales, ¶ 9.
DISCUSSION
¶15 Did the District Court err in denying COT’S motion for summary judgment?
¶16 According to COT, the District Court erred in denying its motion for summary judgment given that both MacKay and Orcutt failed to exhaust their remedies under the CBA. COT contends that failure to follow the grievance procedure contained in the CBA bars suit in District Court, and that MacKay and Orcutt should not have been allowed to “sidestep” their CBA remedies.
¶17 MacKay and Orcutt, for their part, contend on appeal that: (a) they were not union members and, therefore, were not required to follow the grievance procedure contained in the CBA; (b) even if they were covered by the CBA, the grievance procedure contained therein was not mandatory; (c) the CBA contains no clear waiver of the right to a jury trial; and (d) they sought assistance from the union but none was forthcoming.
¶18 It is uncontested that MacKay and Orcutt were not members of the union, but that they paid representation fees as required by the CBA. The terms and conditions of employment, and consequently their claims were, however, subject to the terms of the CBA. See CBA Article 5, 5.11, A. In their complaint they alleged that they were covered by the CBA. In the pre-trial order, signed by counsel and ordered by the court on November 8, 2001, they contended they were covered by the CBA. The pre-trial order superceded the pleadings. Article 2,2.1, b. of the CBA provides that the bargaining unit consists of all instructional employees of COT employed for the full academic year. Both MacKay and Orcutt had instructional duties. Article 5, 5.11, A., of the CBA provides that employees covered by the terms of the agreement shall pay either union dues or a representation fee. Both paid such fee. It is, *472 to say the least, clear that MacKay and Orcutt were covered by the CBA.
¶19 Article 1,1.1, of the CBA provides that a purpose of the agreement is to establish terms and conditions of employment. Article 4, 4.1, of the CBA provides that the employer shall provide employees with a safe place to work. All of the claims at issue relate to safety issues regarding the employment and constructive discharge of MacKay and Orcutt.
¶20 Article 8,8.1 and 8.2, provide that all grievances are to be subject to said Article 8, entitled “Grievance Procedure and Arbitration;” that a grievance includes a violation of the CBA; and that a grievant is an employee. There can be no doubt that the claims of MacKay and Orcutt are covered by, and that they could have been made the subject of a grievance under the CBA.
¶21 MacKay and Orcutt claim that the grievance procedure in the CBA is permissive and not mandatory as Article 8, 8.8 states that any employee may file a grievance. They are correct that the word “may” is permissive and “shall” is mandatory. However, we disagree that use of the word “may” means the grievance procedure is permissive.
¶22 Rather, the grievance procedure in question is mandatory. The CBA provides in pertinent part:
8.1 GRIEVANCE PROCEDURE
The purpose of this article is to set forth prompt and efficient procedures for the resolution of all grievances....
8.2 GRIEVANCE DEFINITIONS
A grievance shall mean an alleged violation, misinterpretation or misapplication of the provisions of this agreement....
8.8 PROCEDURES FOR FILING GRIEVANCES
All grievances must be filed within twenty-five (25) days after the occurrence of the incident which initiated the grievance, or within twenty-five (25) days after the employee should have reasonably known of the circumstances which gave rise to the grievance.... All grievances shall be presented in accordance with the grievance procedure set forth below.
Step 1: Any employee may file a formal written grievance with the Dean who shall conduct a meeting ....
Step 2: If the grievance is not resolved at Step 1, the grievance may be filed with the President....
[Emphasis added.]
“All,” i.e. every, grievance must be filed within 25 days. All grievances *473 must be presented in accordance with the agreed procedures.
¶23 Of course, it is not required that an aggrieved employee file a grievance-she may choose to not file and let the matter drop. The word “may” in Step 1 of the grievance procedure merely means that if an employee does choose to seek a remedy she may do so by filing a formal written grievance with the Dean. See Bonnot v. Congress of Indep. Unions (8th Cir. 1964), 331 F.2d 355, 359. Such provision does not mean that use of the grievance procedure is not required. Similarly, if the employee is not satisfied with the result of Step 1, she may or may not utilize Step 2, by filing the grievance with the President. The word “may’ in Step 2 does not mean that if the employee is dissatisfied with the result of Step 1 she may then opt out of the grievance procedure and file suit. Cf. Brinkman v. State (1989), 224 Mont. 238, 243-45, 729 P.2d 1301, 1305-06, overruled on other grounds by Foster v. Albertsons, Inc. (1992), 254 Mont. 117, 126, 835 P.2d 720, 726. Therefore, the grievance procedure is not permissive, but is clearly mandatory.
¶24 As an adjunct argument, MacKay and Orcutt claim the CBA merely makes available a permissive grievance procedure as it contains no clear and unmistakable waiver of the right to a jury trial, and thus they were not required to grieve their claims under the CBA. However, the question is actually whether the CBA covers the dispute. We have stated:
Only in those cases where it is certain that the arbitration clause contained in a collective bargaining agreement is not susceptible to an interpretation that covers the dispute is an employee entitled to sidestep the provisions of the collective bargaining agreement.
Small v. McRae (1982), 200 Mont. 497, 504, 651 P.2d 982, 986; Winchester v. Mountain Line, 1999 MT 134, ¶ 24, 294 Mont. 517, ¶ 24, 982 P.2d 1024, ¶ 24. Therefore, if the CBA covers the dispute, as is the case here, the CBA should be interpreted as requiring use of the grievance procedure.
¶25 This Court has consistently held that an employee covered by a CBA that contains a grievance procedure must exhaust that remedy before bringing suit. Small, 200 Mont. at 504-05, 651 P.2d at 986-87; Brinkman, 224 Mont. at 243-45, 729 P.2d at 1305-06; Irving v. School Dist. No. 1-1A (1991), 248 Mont. 460, 469, 813 P.2d 417, 422; Lueck v. United Parcel Serv. (1993), 258 Mont. 2, 8, 851 P.2d 1041, 1044-45. The purpose of the rule is to encourage arbitration of disputes, and to make the use of grievance procedures in union agreements attractive to both labor and management.
*474 To allow a member of the collective bargaining unit to completely sidestep available procedures would, just as under federal law, exert a disruptive influence upon both the negotiation and administration of collective bargaining agreements and effectively deprive employers and unions of the ability to establish a uniform and exclusive method for the orderly settlement of employee grievances.
Small, 200 Mont. at 504, 651 P.2d at 986; Brinkman, 224 Mont. at 245, 729 P.2d at 1306. We decline to depart from the rule requiring exhaustion of the remedies available in a collective bargaining agreement, or more specifically, this CBA.
¶26 In her dissent, Justice Cotter asserts that § 39-31-306, MCA, nevertheless allows MacKay and Orcutt to bring suit in the district court despite the grievance procedure outlined in the CBA. While MacKay and Orcutt responded to COT’s summary judgment motion with that argument in the District Court and COT there replied that the statute was not applicable, MacKay and Orcutt did not raise this issue on appeal. Under Rule 23(b), M.R.App.P., a respondent must follow Rule 23(a)(4), M.R.App.P., and therefore must present an argument that “contain[s] the contentions of the [respondent] with respect to the issues presented, and the reasons therefor.” See also Emery v. Federated Foods, Inc. (1993), 262 Mont. 83, 87, 863 P.2d 426, 429. Because MacKay and Orcutt did not present the issue of the statute on appeal, we cannot consider it as basis for our decision here. ¶27 Finally, MacKay and Orcutt argue that while they sought the union’s help in allaying their fear and safety concerns arising from Dion’s threats by bringing them to Union Representative Buer, she did nothing to help, and in fact worked against them. They claim that because they attempted to get assistance from the union, they are excused from their obligation to file a grievance. However, the procedure clearly states that it is the employee that is to file the grievance. Neither approval nor participation is required from the union. The right and obligation to follow the preliminary grievance procedure rests with the employee. MacKay and Orcutt cannot now blame the union where they did not even attempt to invoke those stages of the grievance procedure that do not require union cooperation. Cf. Angst v. Mack Trucks, Inc. (3rd Cir. 1992), 969 F.2d 1530, 1538.
¶28 MacKay and Orcutt, having failed to avail themselves of the remedy available to them through the CBA, are foreclosed from maintaining this suit. The judgment entered in the District Court is reversed and remanded with instructions to dismiss the complaint.
*475 CHIEF JUSTICE GRAY, JUSTICES NELSON and RICE concur.