FILED

May 25 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0330

DA 15-0330

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 125N

JON G. CRUSON,

      Plaintiff and Appellee,

    v.

MISSOULA ELECTRIC COOPERATIVE, INC.,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 13-645
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          David B. Cotner, Anna C. Conley, Datsopoulos, MacDonald & Lind, P.C.,
Missoula, Montana

          Edward "Rusty" Murphy, Murphy Law Offices, PLLC,
Missoula, Montana

      For Appellee:

          David C. Berkoff, Berkoff Law Firm, P.C., Missoula, Montana

          Nate McConnell, McConnell Law Office, P.C., Missoula, Montana

Submitted on Briefs:  March 16, 2016

Decided:  May 25, 2016

Filed:

                             Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Missoula Electric Cooperative, Inc. (MEC) appeals from an order entered by the Fourth Judicial District Court, Missoula County, partially denying its motion for summary judgment on claims filed by Jon Cruson (Cruson). We reverse.

¶3 MEC employed Cruson as a master electrician from October 1, 2001, until May 20, 2013.[1] Employing Cruson as its lone master electrician qualified MEC to receive an Unlimited Electrical Contractor's License from the Montana State Electrical Board. Cruson is a member of the Local Union 44 of the International Brotherhood of Electrical Workers, which entered into a Collective Bargaining Agreement (CBA) with MEC.

¶4 Around 2009, Cruson began complaining to MEC's general manager, Mark Hayden (Hayden), other management personnel, and MEC's board of directors that unqualified employees were performing work that only an electrician could perform.

---

[1] For additional factual background, *see Cruson v. Missoula Elec. Coop., Inc.*, 2015 MT 309, 381 Mont. 304, 359 P.3d 98.

2

Cruson resigned from his position on or about May 19, 2013. Cruson initiated the grievance process on May 28, 2013, by submitting a written complaint to MEC alleging constructive discharge and retaliation for whistleblowing. Cruson's grievance described the same facts that formulate the basis of the claims asserted in this action—that MEC allowed unqualified employees to conduct electrical work which created an unsafe working environment and put Cruson's Master Electrician's License at risk. Pursuant to the grievance procedure, on June 5, 2013, Cruson, representatives from his union, Hayden, and MEC's attorney met to discuss settling the dispute, but failed to reach an agreement. On June 6, 2013, Cruson filed a complaint against MEC and a demand for a jury trial. On June 28, 2013, the union demanded arbitration of Cruson's grievance. The parties scheduled binding arbitration proceedings to be held April 14-15, 2014. However, on March 10, 2014, before arbitration began, Cruson withdrew his grievance under the CBA and cancelled the scheduled arbitration hearing.

¶5    After resigning, Cruson filed four separate actions against MEC.[2] Cruson's June 6, 2013 complaint, included eleven counts: 1) Violation of Article II, Section 3 of the Montana Constitution; 2) Deceit; 3) Fraud; 4) Constructive Fraud and Misrepresentation; 5) Tortious Interference with Electrical License Requirements; 6) Constructive Discharge for Refusing to Violate Public Policy; 7) Retaliation for Refusing to Violate Public Policy; 8) Negligent Hiring, Training, and Supervision;

---

[2] The record does not establish in what tribunals or forums the other three actions have been filed and they are not currently before us.

3

9) Negligent Infliction of Emotional Distress; 10) Intentional Infliction of Emotional Distress; and 11) Negligence Per Se. On June 25, 2014, MEC filed a motion for summary judgment on all claims. In its order, the District Court partially granted and partially denied MEC's motion for summary judgment. The District Court did not rule specifically regarding each count.[3]

¶6 The issue raised on appeal is whether the District Court erred by concluding Cruson's claims relating to safety and licensing fell outside the scope of the parties' CBA and were not subject to its mandatory arbitration provision.

¶7 We review an entry of summary judgment de novo and perform the same analysis as a district court pursuant to Rule 56 of the Montana Rules of Civil Procedure. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 36, 345 Mont. 12, 192 P.3d 186 (citation omitted). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

¶8 In its motion for summary judgment and brief in support filed in the District Court, MEC argued that Cruson failed to complete the arbitration process required by the CBA and failed to exhaust his contractual remedies. This failure, MEC maintained,

---

[3] On appeal, the parties dispute whether the language of the District Court's order dismissed specific claims. However, because we conclude the CBA covers and preempts all of Cruson's claims, we do not address which, if any, specific claims the District Court's order may have dismissed.

4

waived Cruson's right to pursue this lawsuit in District Court. On appeal, Cruson contends that a) the CBA does not govern his employment because he has a special relationship with MEC; b) MEC's prior admission that the CBA does not cover Cruson's claims bars MEC from now arguing that there is coverage; and c) Cruson's claims are not covered or preempted by the CBA. We address each contention in turn.

*a. Special relationship*

¶9 On appeal, Cruson first argues that a special relationship between himself and MEC distinguished his employment such that Cruson was not governed by the terms of the CBA. Cruson explains that this relationship is unlike MEC's other employment relationships because Cruson acted as MEC's lone master electrician. Cruson contends this special relationship allowed MEC to apply for and receive its Unlimited Electrical Contractor's License. MEC responds that there was no special relationship that exempted Cruson's employment from the terms of the CBA.

¶10 We agree with MEC. "We interpret the provisions of a [CBA] 'according to the plain, ordinary language used by the parties.'" *Klein*, ¶ 20 (quoting *Winchester v. Mountain Line*, 1999 MT 134, ¶ 28, 294 Mont. 517, 982 P.2d 1024). Cruson was a member of the Local Union 44 of the International Brotherhood of Electrical Workers. That entity entered into the CBA with MEC, which governs the employment relationships between MEC and "all employees with job classifications that perform electrical maintenance and construction." Cruson was employed by MEC as its master electrician to perform electrical maintenance and construction. As such, his employment

5

was governed by the CBA. Furthermore, Cruson implicitly appeared to recognize that his employment was governed by the CBA because he initially followed its grievance procedure, but did not complete it. Pursuant to the plain language of the CBA, grievances respecting Cruson's employment were matters governed by the CBA.

### b. Prior admission

¶11 Next Cruson argues MEC is barred from asserting that the CBA covers Cruson's claims because MEC already admitted the CBA does not cover his claims. Cruson refers to a letter written by Hayden and addressed to Cruson's union as support for his assertion that MEC admitted the CBA does not cover his claims. That letter states, in part: "Mr. Cruson voluntarily quit his position with [MEC]. I do not believe that he has demonstrated a violation of the [CBA]. Therefore his grievance is denied." "A judicial admission is an express waiver made to the court by a party or its counsel conceding for the purposes of trial the truth of an alleged fact." *Bilesky v. Shopko Stores Operating Co., LLC*, 2014 MT 300, ¶ 12, 377 Mont. 58, 338 P.3d 76 (internal quotations and citation omitted). "There must be a statement made to the court" and "[s]tatements made outside the litigation proceedings are not made to the court, and thus cannot be judicial admissions." *Bilesky*, ¶ 13 (citations omitted). This letter was sent pursuant to the grievance process, outside litigation proceedings before a court. Furthermore, contrary to Cruson's assertion, this letter did not expressly concede that the CBA does not cover Cruson's claims. Instead, it discusses MEC's belief that the CBA was not violated. MEC did not admit the CBA lacked coverage over Cruson's claims.

6

*c. CBA coverage*

¶12 Cruson contends that his claims fall outside the scope of the CBA because they are based on public policy and state licensing requirements. Cruson's complaint contained eleven allegations stemming from his contention that MEC allowed unqualified employees to complete work only a licensed electrician is authorized to conduct. This, Cruson contends, placed his Master Electrician's License in jeopardy and endangered the public at large. MEC counters that all of Cruson's claims relate to safety and licensing and are expressly covered by the CBA.

¶13 "Only in those cases where it is certain that the arbitration clause contained in a [CBA] is not susceptible to an interpretation that covers the dispute is an employee entitled to sidestep the provisions of the [CBA]." *Small v. McRae*, 200 Mont. 497, 504, 651 P.2d 982, 986 (1982) (citation omitted). For example, in *MacKay v. State*, 2003 MT 274, 317 Mont. 467, 79 P.3d 236, nursing instructors at the Montana State College of Technology filed a complaint against their employer alleging failure to provide a safe working environment, constructive discharge, and other related claims. *MacKay*, ¶ 9. On appeal, this Court concluded the district court erred when it denied Montana State College of Technology's motion for summary judgment. Summary judgment should have been granted because a CBA covered the parties' employment relationship and governed workplace safety. We stated, "If the CBA covers the dispute . . . the CBA should be interpreted as requiring use of the grievance procedure." *MacKay*, ¶ 24. Further, we specified that this Court consistently holds that "an employee covered by a

7

CBA that contains a grievance procedure must exhaust that remedy before bringing suit." *MacKay*, ¶ 25 (citations omitted). "The purpose of the rule is to encourage arbitration of disputes, and to make the use of grievance procedures in union agreements attractive to both labor and management." *MacKay*, ¶ 25. In *MacKay*, we determined that the CBA could be interpreted as offering coverage and, therefore, that the instructors must have exhausted their contractual remedies before filing suit.

¶14 Conversely, in *Klein v. State*, 2008 MT 189, 343 Mont. 520, 185 P.3d 986, we addressed whether an employee's tort claims were covered by a CBA. There, the CBA stated, "the parties hereto agree that they will promptly attempt to adjust all disputes arising between them involving questions of interpretation or application of the terms and provisions of this Agreement." *Klein*, ¶ 13. We concluded that Klein was not required to pursue her tort claims of deceit and negligent infliction of emotional distress through arbitration pursuant to the CBA because these claims did not involve "interpretation or application" of the CBA's terms. *Klein*, ¶ 24. We stated, "the alleged actions of the [employer] are far afield of any employment action and have nothing to do with [] any of the rights, terms, or provisions enumerated in the CBA." *Klein*, ¶ 26. In *Klein*, we determined that the plain language limited the CBA's coverage to disputes interpreting or applying its terms and left Klein's tort claims outside the scope of the parties' agreement.

¶15 Here, the CBA covers "all employees with job classifications that perform electrical maintenance and construction." Summarized, the CBA includes general provisions, grievance and arbitration procedures, guidelines for proper crew make-up to

8

ensure workplace safety, and working rules. The grievance and arbitration procedures direct employees who believe they have been aggrieved on any matter covered by the CBA to write a grievance stating the provision of the CBA allegedly violated and the relief they seek. After the written grievance is submitted, this provision directs the necessary parties to hold a conference to discuss the issues and agree on a remedy. According to these procedures, if the controversy is not resolved and either party demands arbitration, the parties proceed to arbitration. The working rules outline various classifications of workers, such as working foremen, servicemen, electricians, linemen, groundmen, and apprentices and specify crew make-up to perform work safely and productively.

¶16 Although Cruson states many claims in his complaint, all are derived from his assertion that MEC allowed unqualified employees to conduct work only an electrician is authorized to do. This, he argued, jeopardized his Master Electrician's License because "[t]he responsible electrician of a licensed electrical contractor shall not allow any person to perform electrical work unless properly licensed." Admin. R. M. 24.141.403(5). Upon examination of each count in Cruson's complaint and the factual allegations offered as support, we conclude all of the claims arise from Cruson's allegations related to electrical safety and licensing violations occurring while Cruson was employed with MEC.

¶17 "When reviewing whether a claim is covered by the terms of a [CBA], the role of the court is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. If it is, then the aggrieved party must pursue and exhaust those remedies provided for in the [CBA]." *Klein*, ¶ 20 (internal quotations and citations omitted). The scope of a CBA may be negotiated to include arbitration of any controversy and "a broadly written arbitration provision requiring arbitration of 'any controversy' encompasses a tort claim of assault." *Edwards v. Cascade Cnty. Sheriff's Dep't*, 2009 MT 451, ¶ 54, 354 Mont. 307, 223 P.3d 893 (citations omitted). "When the scope of a [CBA] is written more narrowly than 'any controversy' or 'all claims,' the contract wording must be reviewed to determine which claims are not rooted in the [CBA] and are capable of being litigated directly in court." *Edwards*, ¶ 54 (citation omitted). Here, the grievance and arbitration procedure outlined in the CBA states, "Any employee or group of employees who believes that they have been aggrieved on any matter covered by this Agreement shall proceed as follows."

¶18 We now compare the CBA terms to determine whether allegations related to electrical safety and licensing violations are covered by the CBA. Sections 11.02, 11.04, 11.07, 12.00, and 12.01 cover general safety in the workplace, providing for "proper crew make-up," avoiding accidents, and MEC's duty and authority to draft and enforce safety provisions. Sections 11.00, 11.01, 11.02, and 11.04 cover job classifications, work crew assignments, and generally regulate what class of employee can do specific types of work. Together, these provisions cover safety related issues and work assignments,

10

which Cruson alleges were inappropriately completed and jeopardized his Master Electrician's License. Accordingly, whether interpreted as broadly written or narrowly written, the provisions of the CBA cover Cruson's safety and licensing claims.

¶19 Our decision today comports with the decisions discussed above. Because our conclusion is that the plain language and interpretation of the CBA provides coverage for Cruson's claims, he is not entitled to "sidestep" its provisions. The CBA allows a party to demand arbitration, § 5.01, and Cruson's union did so on June 28, 2013. Cruson must have exhausted his contractual remedies under the CBA before filing this suit. The District Court erred by failing to grant MEC's motion for summary judgment.

¶20 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no issues of first impression and does not establish new precedent or modify existing precedent.

¶21 The District Court's order is reversed and remanded for entry of summary judgment in favor of MEC.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE