No. 02-433

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 140

THE CONFEDERATED TRIBES OF THE
GRAND RONDE COMMUNITY OF OREGON,

        Plaintiff and Respondent,

    v.

QUANTUM FIVE, INC., a Montana corporation;
DELAYED EXCHANGE CORPORATION,  a
Washington corporation; INK INVESTMENT, LLC;
RAYMOND G. GEHLEN, JR; JACOBSON DRILLING
INC.; BERNARD PATRICK,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Twelfth Judicial District,
                In and for the County of Hill, Cause No. DV-99-108
                The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

        Shawn M. Glen, Deschenes Law Office, Great Falls, Montana

        For Respondent:

        Stephen R. Brown, Garlington, Lohn & Robinson, PLLP, Missoula, Montana

                                        Submitted on Briefs:  June 12, 2003

                                        Decided:  June 7, 2004

Filed:

_____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Quantum Five (Quantum) defaulted on a loan resulting in the lender foreclosing against it. Quantum claimed that the loan terms included a usurious interest rate. The Twelfth Judicial District Court, Hill County, agreed and imposed a usury penalty against the lender. Quantum appeals the District Court's calculation of the usury penalty from the date the note was executed until its maturity date, claiming that the usury penalty should have been imposed through the date of the trial. Additionally, Quantum seeks an award of attorney's fees and costs. We affirm the District Court's Order on the usury penalty calculation and decline to reach Quantum's request for attorney's fees.

## ISSUE

¶2    A restatement of the dispositive issue in this case is whether the District Court correctly concluded that the usury penalty should be calculated from the date the note was executed until the date the note matured, rather than through the date of trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On October 30, 1996, Quantum borrowed $900,000 to purchase real property in Hill County, Montana. The original lender promptly sold the note to The Confederated Tribes of the Grand Ronde Community of Oregon (Tribes). The note carried an interest rate of 15%, with a default rate of 18%. The parties agreed that Montana law would control in the event of a dispute. Under the statutes in effect in Montana at the time, the maximum interest rate the parties could have utilized under either current or default circumstances was 15%. Section 31-1-107, MCA. The note matured on November 15, 1997, at which time Quantum

was to have repaid all principal and accrued interest. During the term of the loan, Quantum was required to make quarterly interest payments.

¶4      Quantum defaulted on the note on February 15, 1997, when it failed to make its first quarterly interest payment. Tribes began charging 18% default interest on February 26, 1997, and charged 18% until August 4, 1997, at which time a $3,661 principal payment and a $120,751 interest payment was made, bringing the note current until February 28, 1998. Another smaller payment of $33,655 was made in November 1997, and applied to interest due. Having received no additional payments, Tribes again began charging 18% interest on March 1, 1998. No further payments were made against the note.

¶5      On July 26, 1999, Tribes filed a foreclosure action against multiple defendants, including Quantum. Issues associated with the other defendants were disposed of during the course of the litigation and are not pertinent to this proceeding. From the record it appears that sometime in 1999, Tribes received notification from counsel that the 18% default interest rate violated the usury statute. Therefore, in their foreclosure complaint, Tribes averred 15% interest in an effort to avoid any demand for a usurious interest penalty.

¶6      Quantum filed an Answer in which it argued that the promissory note's 10% loan fee in combination with the 15% interest rate on current debt created a usurious loan. In April 2002, the District Court issued its Order declaring that the loan fee and interest rate on current debt was not usurious but concluding that the 18% default interest rate was. It then calculated the statutorily-authorized usury penalty for a term commencing with the inception date of the note and concluding on the note's maturity date.

3

¶7      The District Court also concluded that reasonable attorneys fees sought by both parties should cancel each other out, based on Quantum's success in establishing a usury claim and Tribes' success in their claims on the note and foreclosure of the mortgage. Tribes ultimately received a net judgment in their favor. Quantum appeals both the calculation of the usury penalty and the court's decision regarding attorney's fees.

## STANDARD OF REVIEW

¶8      The District Court's calculation of the usury penalty and its conclusion offsetting the parties' attorneys' fees are conclusions of law. We review a district court's conclusion of law for correctness. *MacKay v. State*, 2003 MT 274, ¶ 14, 317 Mont. 467, ¶ 14, 79 P.3d 236, ¶ 14 (citation omitted).

## DISCUSSION

¶9      It is undisputed that 1) Quantum's loan document contained an 18% default interest; 2) Quantum defaulted on the note; and 3) Tribes sent letters to Quantum demanding payment at the usurious 18% rate. While Tribes proffered arguments that the interest rates charged were not usurious, the District Court held otherwise, and under §§ 31-1-107 and -108, MCA, assessed a usury penalty.

¶10     Section 31-1-107(1), MCA, establishes the legal interest rate that is allowed by agreement. It states:

> (1)  Parties may agree in writing for the payment of any rate of interest that does not exceed the greater of 15% or an amount that is 6 percentage points per annum above the prime rate of major New York banks, as published in the Wall Street Journal edition dated 3 business days prior to the execution of the agreement. Interest must be allowed according to the terms of the agreement.

4

At the time Quantum entered into this note, the prime rate was 8.25%.

¶11    Section 31-1-108, MCA, authorizes the assessment of a penalty for usury and an action to recover excessive interest.  It provides:

> (1)  The taking, receiving, reserving, or charging a rate of interest greater than is allowed by 31-1-107 shall be deemed a forfeiture of a sum double the amount of interest which the note, bill, or other evidence of debt carries or which has been agreed to be paid thereon.
>
> (2)  When a greater rate of interest has been paid, the person by whom it has been paid, his heirs, assigns, executors, or administrators may recover from the person, firm, or corporation taking, receiving, reserving, or charging same a sum double the amount of interest so paid, provided that such action shall be brought within 2 years after the payment of said interest, and provided that, before any suit may be brought to recover such usurious interest, the party bringing suit must make written demand for return of said interest so paid.

¶12    Quantum maintains that the usury penalty should have been assessed from the date of the note's inception through the date of trial--October 24, 2001--rather than simply through the maturity date of the loan, November 15, 1997.  The reason for this argument is obvious: the longer the term of the penalty, the greater the offset against the balance due on the loan by Quantum.  The District Court considered calculating the authorized penalty from the date of the note, October 30, 1996, until the trial date based on *E.C.A. Environ. Management v. Toenyes* (1984), 208 Mont. 336, 679 P.2d 213, but concluded that our decision in *Rustics of Lindbergh Lake, Inc. v. Lease* (1984), 213 Mont. 246, 690 P.2d 440, was controlling.

¶13    In *Toenyes*, the district court was presented with a suit filed by MMI against Toenyes for recovery on a demand promissory note, and a counterclaim for damages for breach of

contract. Among other things, the District Court concluded that the promissory note's interest rate was usurious, and assessed a usury penalty against MMI for a term commencing with the date of the note's execution until the trial date. *Toenyes*, 208 Mont. at 343, 679 P.2d at 217. Citing *Bermes v. Sylling* (1978), 179 Mont. 448, 587 P.2d 377, this Court affirmed the calculation, explaining:

> The note was payable on demand and such demand was made prior to the initiation of this action. [MMI] assert[s] that upon demand the note matured and [it] cannot be penalized for usurious interest after that date.
>
> Obligations on the note . . . continued after demand was made for payment. The lender, MMI, did not cancel the rights it had under the note after demand. The note, usurious on its face, is usurious as long as its original existence continues. . . .
>
> . . . The fact that the lender in *Bermes*, like MMI, had made a prior demand for payment was not dispositive. Where the indebtedness on a usurious loan remains uncanceled up to the time of trial, assessment of the usury penalty up to that date is proper under Section 31-1-108, MCA.

*Toenyes*, 208 Mont. at 343-44, 679 P.2d at 217.

¶14 Approximately nine months after *Toenyes* was decided, this Court decided *Rustics*. In *Rustics*, the parties entered into an oral agreement under which the borrower, Lease, would purchase logs from Rustics and pay Rustics 17% interest on the unpaid balance of the account. Having fallen behind in his payments five months after reaching the oral agreement, Lease signed a promissory note to Rustics reflecting a balance, with interest, of approximately $15,000. The promissory note carried a 20% interest rate and was due in full in sixty days. *Rustics*, 213 Mont. at 247, 690 P.2d at 441.

6

¶15 Lease managed to pay approximately one-half of the balance by mid-August 1980, two full months past the due date. Rustics sued to collect the remaining balance. Lease counterclaimed that the note was usurious. *Rustics*, 213 Mont. at 247, 690 P.2d at 441. The District Court ultimately entered a judgment for Rustics, the amount of which was partially offset by a usury penalty. The court concluded that the statutorily-allowed maximum interest Rustics could have charged under the law in effect at the time was 17%; therefore, the 20% demanded under the promissory note was usurious. Unlike in *Toenyes*, however, the court calculated the usury penalty based on the two-month term of the promissory note, rather than through the trial date. *Rustics*, 213 Mont. at 248, 690 P.2d at 442. Despite Lease's protestations that the usury penalty should be based upon the interest paid both before and after the term of the promissory note, the District Court determined that 1) the 17% charged under the oral agreement before the written promissory agreement was executed was not usurious, and 2) Lease failed to file the required counterclaim seeking affirmative relief under § 31-1-108, MCA. *Rustics*, 213 Mont. at 248, 690 P.2d at 442.

¶16 On appeal, Lease argued for the first time, based on the recent *Toenyes* decision, that the penalty should have been applied from the date the promissory note was executed until the time of trial. This Court, without elaboration, ruled:

> We decline the opportunity to extend the rulings of *Toenyes* and *Bermes* to the case at bar which concerns a note due on a specified date. In any event, we note that the issue was not raised nor argued before the trial court. As such, [Lease] cannot fault the lower court for failing to reach the question. We hold that issues not raised in the pleadings or otherwise at trial will not be considered on appeal. [Citation omitted.]

7

*Rustics*, 213 Mont. at 250, 690 P.2d at 442.

¶17 Quantum maintains there are significant factual distinctions between *Rustics* and the case before us. We agree. We also agree that there are significant similarities between this case and *Toenyes* and *Bermes.* However, as we did in *Rustics*, we again decline to extend the *Toenyes* and *Bermes* rulings to the case at bar. We do so based on deference to the District Court's analysis and conclusions and the specific and unique facts in this case.

¶18 As stated above, § 31-1-108(1), MCA, authorizes the forfeiture of a sum double the amount of a usurious interest rate which a note carries or which has been agreed upon by the parties. To calculate this forfeiture, or usury penalty, it is necessary to ascertain the inclusive dates during which the usurious interest rate applied. Montana case law has identified two dates that can be used in this calculation--the maturity date of a term loan or the trial date on a demand loan.

¶19 Quantum argues that the District Court erred when it calculated the usury penalty using the maturity date of the note rather than the trial date. However, as noted by Tribes, there is no precedent to support Quantum's position. In *Bermes* and *Toenyes*, the Court calculated a *demand loan* usury penalty based on the trial date. In *Montana National Bank of Bozeman v. Kolokotrones* (1975), 167 Mont. 92, 535 P.2d 1017, and *Rustics*, the Court was presented with *term contracts with specific maturity dates* and calculated the usury penalty based on the life of the loans. The District Court in this case was faced with a term loan. Citing "unique facts," the court relied on *Rustics* and calculated the usury penalty using the final maturity date of the loan.

8

¶20 The court found it significant that: 1) Quantum borrowed money but never made a payment[1], 2) the loan carried a legal interest rate for current debt--it was only the default rate that was usurious, and 3) when Tribes discovered the usurious default interest rate, they retroactively re-calculated the loan to eliminate application of the usurious rate. This retroactive application of the legal interest rate resulted in an assessment of a 15% interest rate over the entire life of the loan, including all times Quantum was in default. Therefore, Quantum never paid 18% interest during the life of this note or after it matured. Had the District Court calculated the usury penalty through the trial date of October 24, 2001, Tribes, unfairly, would have ended up owing Quantum a substantial amount of money, a clearly inequitable result under the circumstances.

¶21 We have held that courts may consider equitable principles when deciding usury cases. *Hanson v. Bonner* (1983), 202 Mont. 505, 513, 661 P.2d 421, 425. Under these circumstances, we agree with the District Court's conclusion that "[t]he *Rustics* rule is far more appropriate," and equitable.

¶22 Quantum also challenges the District Court's decision regarding attorney's fees, and seeks fees and costs on appeal. Having ruled in favor of Tribes, we need not address this claim.

---

[1] The two payments made to Tribes were made by other defendants not a party to this appeal.

## CONCLUSION

¶23     For the foregoing reasons, we affirm the District Court's calculation of the usury penalty.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM REGNIER